IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-01072-CNS

A.T.,

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

    Defendant.

**ORDER**

This matter is before the Court for judicial review of the final decision by the Acting Commissioner of the Social Security Administration ("the Commissioner") denying A.T.'s[1] application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XIV of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). For the following reasons, the Court AFFIRMS the Commissioner's denial of benefits.

## I.  BACKGROUND

A.T. was 40 years old at the alleged onset date of disability of August 15, 2016 (Administrative Record ("A.R.") at 12, 25). A.T. lives with several serious impairments including complex regional pain syndrome ("CRPD") status post reconstructive surgery

---

[1] Pursuant to D.C.COLO.L.APR 5.2(b), Plaintiff A.T. is identified by her initials only.

1

of the right ankle, degenerative disc disease of the lumbosacral spine with radiculopathy, headaches, obesity, mood disorder versus depressive disorder, anxiety disorder, personality disorder, and attention deficit-hyperactivity disorder ("ADHD") (*see, e.g.*, A.R. at 1795).

The issues that A.T. raises on appeal stem from a work-related injury and her mental health. In July 2016, an approximately twelve-pound industrial can of nacho cheese fell on A.T.'s right ankle (A.R. at 580). This resulted in torn ligaments and tendons that required reconstructive surgery (A.R. at 1800). Despite the reconstructive surgery, A.T. has continued to suffer pain and physical limitations from the right ankle injury. Exams have shown intermittent hypersensitivity around the right ankle and variably decreased lumbar range of motion in the injured ankle (*id.*). In addition to severe physical pain from the injury, A.T. began to suffer headaches (*id.*). Her medical providers deemed that these were likely tension headaches related to her ankle pain and associated muscle tightness (A.R. at 514–15, 1260). The headaches were treated with a combination of medication and massage interventions aimed at reducing muscle tension (*id.*). As discussed in more detail below, the medical evidence and testimony includes a range of reports regarding the severity and persistence of A.T.'s headaches.

In relation to her mental health, three non-examining psychologists completed evaluations of A.T. based on her medical records. On April 30, 2019, consultative examiner Dr. Rosengren concluded that A.T.'s "ability to persist in work-related activities at a reasonable pace [is] moderately limited by mood, anxiety, and learning disability symptoms" (A.R. at 1399). On May 9, 2019, state-agency physician Dr. Suyeishi

concluded that A.T. is moderately limited in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" because her "symptoms may interfere with her ability pay attention and concentrate at times" (A.R. at 123). Dr. Suyeishi additionally stated that A.T. "is capable of work of limited complexity but which requires accuracy and attention to detail" (A.R. at 124). On October 17, 2019, state-agency physician Dr. Hanze reconsidered both prior findings and adopted Dr. Suyeishi's conclusions regarding A.T.'s limitations in maintaining concentration, persistence, and pace as well as her ability to perform work of limited complexity (A.R. at 139, 143).

On December 4, 2018, A.T. applied for DIB and SSI (*see* A.R. at 12, 289–90). A.T. was initially denied benefits on May 9, 2019 (A.R. at 12). A.T. requested reconsideration of her application, which the Social Security Administration denied on October 18, 2019 (*id.*). A.T. then requested a hearing before an Administrative Law Judge ("ALJ"); the ALJ held a telephonic hearing regarding A.T.'s claim on October 23, 2020 (*id.*). On December 23, 2020, the ALJ issued a written decision denying A.T.'s applications (A.R. at 27). After her request for review to the Appeals Council was denied, A.T. filed an appeal to this Court (A.R. at 1869, 1875–77).[2] The Commissioner requested voluntary remand for additional administrative proceedings (A.R. at 1880–81). The Court granted remand on March 9, 2022 (A.R. at 1884). The Appeals Council remanded the case to the ALJ with

---

[2] The prior appeal was captioned *A.T. v. Commissioner*, No. 1:21-cv-02401-REB (D. Colo. filed Sept. 6, 2021). The documents included in the A.R. that are cited herein bear ECF Nos. 1, 16, and 17 in that proceeding.

instructions to hold a hearing and seek out supplemental evidence to "evaluate whether the claimant's headache disorder is a medically determinable impairment this is severe" and reconsider A.T.'s residual functional capacity ("RFC")[3] (A.R. at 1890). The ALJ held the second hearing on January 5, 2023 (A.R. at 1792). On February 6, 2023, the ALJ issued a second decision denying A.T.'s petitions, finding, at each step of the required five-step analysis, that:

(1) At all relevant times, A.T. had not engaged in any substantial gainful activity (A.R. at 1795).

(2) A.T. suffered from the medically determinable, severe impairments of CRPD status post reconstructive surgery of the right ankle, degenerative disc disease of the lumbosacral spine with radiculopathy, headaches, obesity, mood disorder versus depressive disorder, anxiety disorder, personality disorder, and ADHD (*id*.).

(3) A.T. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 ("the Listings") (A.R. at 1795–96).

(4) Given her impairments, A.T. had the residual functional capacity to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following restrictions: she can lift 20 pounds occasionally and 10 pounds frequently; she can sit for six hours and stand/walk for four hours in an eight-hour workday; she can occasionally climb ramps and stairs, but can never work on ladders, ropes, or scaffolds; she can frequently balance and stoop; she can occasionally kneel, crouch, and crawl; she can never work at unprotected heights or with fast-moving machinery; she should not work in an environment with a noise level like that of a jackhammer; she is limited to unskilled work; and she is able to interact appropriately with coworkers, supervisors, and the public" (A.R. at 1798). Given this RFC, A.T. was unable to perform her past relevant work as a housekeeper (A.R. at 1804).

(5) Nonetheless, there are jobs that exist in significant numbers in the national economy that A.T. could perform (A.R. at 1805).

---

[3] A claimant's RFC is the most they can still do in a work setting despite their limitations. 20 C.F.R. § 416.945(a)(1).

4

A.T. did not file exceptions to the ALJ's decision and the Social Security Appeals Council did not assume jurisdiction, making the ALJ's decision final (ECF No. 1 at 2). 20 C.F.R. § 404.984. A.T. then timely sought review in this Court (*see* ECF No. 1).

## II.  LEGAL STANDARD AND STANDARD OF REVIEW

A claimant is disabled for purposes of the Social Security Act if her physical and/or mental impairments are so severe as to preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." *See* 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987); *see* 42 U.S.C. § 423(d)(2)(C). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. Rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); *see also* 20 C.F.R. § 416.905(a).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

> (1) The ALJ must first ascertain whether the claimant is engaged in "substantial gainful activity." A claimant who is working is not disabled regardless of any medical findings.
>
> (2) The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

5

(3) The ALJ must then determine if the impairment meets or equals in severity certain impairments described in the Listings.

(4) If the claimant's impairment does not meet or equal a Listing, the ALJ must determine whether the claimant can perform his past work despite any limitations.

(5) If the claimant does not have the "residual functional capacity" to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the national economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

See Moore v. Astrue, No. 11-cv-03318-REB, 2013 WL 1222094, at *2 (D. Colo. Mar. 25, 2013) (citing 20 C.F.R. § 404.1520(b)–(f)); accord Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. Moore, 2013 WL 1222094, at *2. The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. Id.

A district court's review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. See, e.g., Pisciotta v. Astrue, 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence" is evidence that a reasonable mind would accept as adequate to support a conclusion, requiring more than a scintilla but less than a preponderance of the evidence. Moore, 2013 WL 1222094, at *2 (citations omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Id. (quoting Musgrave v. Sullivan, 966 F.2d 1371, 1374

(10th Cir. 1992)). In determining whether substantial evidence supports the disability decision, a district court will "meticulously examine the record as a whole," but it will "not reweigh the evidence or retry the case," nor will it substitute its discretion for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Separately, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  ANALYSIS

A.T. alleges two points of error: (1) that the ALJ erred in her RFC determination because she failed to properly account for A.T.'s limitations in concentration, persistence, and pace; and (2) that the ALJ erred in formulating the RFC by improperly evaluating A.T's headaches (ECF No. 12 at 1). The Court respectfully disagrees.

**A.  A.T.'s Concentration, Persistence, and Pace Limitations**

A.T. argues that the ALJ improperly formulated her RFC by failing to include limitations that correspond to the moderate impairment in concentration persistence and pace noted by three medical sources (ECF No. 12 at 9). As noted above, three medical sources opined that A.T. had moderate limitation in sustaining concentration, persistence, and pace in certain work-related activities (*id*. at 6–8). A.T. focused on the opinion of Dr. Rosengren (*id*. at 6–7). A.T. argues that the "the ALJ failed to provide defining limitations which could have accounted for persistence and pace deficiencies" such as "reduced volume, limited speed, reduced production requirements, or the amount of time an individual would be off-task" (*id*. at 9). Although the ALJ limited A.T. to unskilled work,

7

A.T. argues that this limitation "only considered limited characteristics of potential jobs, without any relationship to pace and persistence capacities" (*id*. at 8). In A.T.'s view, the ALJ improperly found Dr. Rosengren's opinions persuasive but failed to account for all his opinions in formulating the RFC (*id*. at 10–11).[4]

The Commissioner responds that ALJ reasonably accounted for A.T.'s concentration, persistence, and pace limitations by limiting her to unskilled work (ECF No. 13 at 7). The Commissioner argues that the ALJ's RFC determination is supported by her discussion of Dr. Rosengren's opinions and by the opinions of state agency psychologists Dr. Suyeishi and Dr. Hanze, who found that A.T.'s related limitations could be accounted for by a limitation in the skill level of work required (*id*. at 10). The Commissioner notes that the doctor's opinions that A.T. could perform work of "limited complexity . . . which requires accuracy and attention to detail" corresponds to semi-skilled work (A.R. at 124, 143; ECF No. 13 at 10). Semi-skilled work is a higher skill level than the unskilled work limitation included in the RFC. 20 C.F.R. § 404.1568(b) (defining semi-skilled work in part as "more complex than unskilled work"). The Commissioner argues that the ALJ's RFC finding is therefore consistent with and supported by the medical evidence (ECF No. 13 at 11).

The ALJ discussed Dr. Rosengren's opinions in detail, differentiating between those parts that she found well supported and those that she did not (A.R. at 1803). As part of this discussion, the ALJ found his opinion that A.T. had "moderate limitations of the ability to work with complex, multi-step instructions, to sustain focus and

---

[4] A.T. did not file a reply.

concentration, to persist in work-related activities at a reasonable pace" to be "only somewhat persuasive" (A.R. at 1803). The ALJ found, instead, that "there is no evidence that the claimant has any limitation of her ability to work with simple, one-step instructions" because exams showed "significantly intact memory and cognition" (*id*.). In contrast, the ALJ found Dr. Rosengren's opinion that A.T. had "moderate limitations of the ability to work with complex, multi-step instructions, to sustain focus and concentration, and to persist in work-related activities at a reasonable pace are consistent with the medical evidence" to be "consistent with the medical evidence" (*id*.). Thus, the ALJ differentiated between Dr. Rosengren's opinion that A.T. had difficulty with complex instructions, which she found well supported, and her opinion that A.T. had any limitations with simple instructions, including those related to concentration, persistence, and pace, which she found were inconsistent with the evidence. Following this discussion, the ALJ concluded that A.T.'s limitations were "accommodated by limiting her to unskilled work" (*id*.).

The Court finds that the ALJ did not err as a matter of law in limiting A.T. to unskilled work to account for A.T.'s concentration, persistence, and pace limitations. The ALJ explained her reasoning for differentiating between complex tasks, where she found evidence supported concentration, persistence, and pace limitations, and unskilled tasks, where she found no support for such limitations. *See Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence."). The ALJ sufficiently explained her rationale for this decision and supported it by reference to medical evidence in the record. The ALJ explained that she did not find that A.T. had concentration,

9

persistence, and pace limitations in relation to carrying out simple instructions (A.R. at 1803). Such simple instructions are characteristic of unskilled work, which consists of "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Thus, by limiting A.T. to unskilled work, the ALJ limited A.T. to tasks where she found A.T. would be able to maintain appropriate concentration, persistence, and pace.

The Tenth Circuit has established that, in certain circumstances, limitation to unskilled work can accommodate moderate difficulties maintaining concentration, persistence, and pace. For example, in *Vigil v. Colvin*, 805 F.3d 1199 (10th Cir. 2015), a claimant argued that the ALJ had failed to account for his concentration, persistence and pace limitations by limiting him to unskilled work. *Id*. at 1203. While the Tenth Circuit acknowledged that a limitation to unskilled work would be insufficient in some cases where the claimant had moderate concentration, persistence, and pace deficits, it found that evidence in the record supported the ALJ's determination that the limitation to unskilled work was sufficient in that case. *Id*. at 1204 (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012)); *see also Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (affirming that a limitation to "only simple, repetitive, and routine tasks" was sufficient because the ALJ explained how it addressed work-related activities). Here, as in *Vigil*, the ALJ explained how the evidence supported the conclusion that limiting the claimant to unskilled work would adequately account for the claimant's moderate limitations in concentration, persistence, and pace (A.R. at 1803). Accordingly, the Court finds no error.

### B.  A.T.'s Headaches

Next, A.T. also argues that the ALJ erred by failing to properly consider A.T.'s headache disorder and by failing to include appropriate, related limitations in the RFC. Although A.T.'s case was remanded with specific instructions to evaluate her headache disorder, A.T. argues that the ALJ nonetheless failed to make a proper analysis in accord with the Appeals Council's instructions (ECF No. 12 at 11). A.T. argues that her testimony and the medical evidence established the severity of her migraines (*id*. at 13–15). Despite this evidence, the ALJ did not specifically account for A.T.'s headaches in the RFC other than by restricting A.T. from jackhammer-level noise (*id*. at 14 (citing A.R. at 1795)).[5] In A.T.'s view, the ALJ rejected the evidence without explanation. A.T. asserts, for example that the "ALJ set forth no examples of doubt she referenced regarding [A.T.]'s reported migraines" (*id*. at 12) and that the ALJ "simply terminat[ed] her evaluation or consideration of headaches after declaring it to be severe" (*id*. at 16). The Court respectfully disagrees.

Consistent with the Appeals Council's instructions, the ALJ extensively discussed A.T.'s headaches and their effect on her ability to perform work-related activities. The entirety of this discussion follows the ALJ's determination at step two that A.T.'s headaches were a severe medically determinable impairment (A.R. at 1795). As part of this discussion, the ALJ extensively discussed the medical evidence, including A.T.'s statements about her symptoms over time found in her medical records, in comparison

---

[5] The ALJ indicated that she considered A.T.'s medically determinable impairments in combination as well as individually (A.R. at 1796).

to A.T.'s hearing testimony. The ALJ's discussion collected together A.T.'s statements regarding her headache symptoms form the medical records:

> The medical evidence additionally shows that the claimant began to complain of intermittent headaches following her right ankle injury that she said occurred with physical therapy and weightbearing on the ankle and were deemed likely tension headaches related to her ankle pain and the stress and anxiety it caused (See ex. 16F/75). However, in late 2016-early 2017, she reported that her headaches were improving with Flexeril, massage therapy, and an injection (see id. at 51, 54, 59, 66, 75) and by May 2017, her headaches were "much improved" (Ex. 9F/37, 39). The medical evidence thereafter documents the claimant's infrequent and progressively diminishing, highly variable, and inconsistent complaints of headaches, including her reports at an October 2017 independent medical exam of having developed a severe headache immediately following her August 2016 right ankle surgery that had persisted since then; in March 2018 of having headaches if she walked or stood for too long; of having some headaches "off and on" for which she used two ibuprofen two to five times a week in October 2018, when she also said that she got a headache whenever she put her right foot down; in October 2019 that she was still having headaches, but gabapentin was helping; and in July 2021 that moving her right foot in certain positions caused her to get a headache (See ex. 8F/208, 313, 316, 9F/18, 62-63, 108, 137, 176, 181, 21F/4, 7, 30F/25).

(A.R. at 1800). This medical evidence contains a variety of contrasting reports regarding the severity and persistence of A.T.'s headaches, but it generally indicates that A.T.'s headaches were intermittently triggered and responded to medication and other treatments.

In restrained language, the ALJ repeatedly called into question the accuracy of A.T.'s hearing testimony regarding her headaches stating, for example, that A.T.'s statements are "inconsistent for several reasons" (A.R. at 1799). To show the inconsistency, the ALJ compared A.T.'s statements regarding her headache symptoms in the medical records with her hearing testimony. For example, the ALJ noted that A.T.

testified during the hearing about "headaches 'all the time' that 'never go away'" in contrast to her reports to medical providers that her headaches were intermittent and improved with conservative treatment (A.R. at 1798). The ALJ noted that "[d]espite [A.T.'s] later description of significantly greater abilities" in her medical records, at the hearing, A.T. "did not report having experienced any improvement of her impairments over the period at issue in this decision and continues to allege having constant, severe right ankle and headache pain" (A.R. at 1799).[6] Ultimately, the ALJ concluded that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (A.R. at 1800). Thus, the ALJ found inconsistencies between A.T.'s testimony and medical evidence that supported her findings. Notwithstanding the ALJ's skepticism regarding the severity and persistence of A.T.'s headache symptoms, "giving the claimant the benefit of the doubt concerning her headaches," the ALJ found it "reasonable to prohibit her exposure to loud noise, such as that of a jackhammer" (A.R. at 1802).[7]

As is apparent from the above summary with excerpts from the decision, the ALJ provided an extensive discussion explaining why she largely rejected A.T.'s testimony regarding the severity and persistence of her headaches. The Court's "limited scope of

---

[6] The ALJ also found numerous other inconsistencies in A.T.'s testimony that do not relate to headaches, which are not discussed here.

[7] A.T. specifically challenges the noise limitation as being unrelated to her symptoms and faults the ALJ for failing to explain "how the noise limitation would mitigate Plaintiff's headache symptoms" (ECF No. 12 at 12). The Court agrees with the Commissioner that it is "common sense" that loud noises would exacerbate headache pain regardless of whether it was triggered by another cause, such as A.T.'s foot injury (ECF No. 13 at 12).

review precludes this court from reweighing the evidence" or substituting its judgment for that of the Commissioner. *Flaherty*, 515 F.3d at 1071 (internal quotation marks omitted). The Court finds that A.T. has not identified reversible error. Accordingly, the decision of the Commissioner will be affirmed.

## IV.  CONCLUSION

Based on the foregoing analysis, the Court ORDERS as follows:

The conclusion of the Commissioner (through the ALJ) that A.T. was not disabled is AFFIRMED.

Dated this 27th day of February 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge